IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOSHUA VINCENT WALSH,                                No. 2:18-cv-00098-HZ

                Plaintiff,                OPINION & ORDER

     v.

MICHAEL GOWER, COLETTE PETERS,
BRAD CAIN, JASON BELL, JUDY
GILMORE, WILLIAM KING, BRIAN
GAFFNEY, and RICO RODRIGUEZ,

                Defendants.

Joshua Vincent Walsh
Oregon State Penitentiary
2605 State Street
Salem, OR 97310

     Pro Se Plaintiff

Ellen Rosenblum
Attorney General
Michael R. Washington
Senior Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

Attorneys for Defendants

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Joshua Vincent Walsh brings this civil rights action under 42 U.S.C.

§ 1983 against Defendants Michael Gower, Colette Peters, Brad Cain, Jason Bell, Judy Gilmore,

William King, Brian Gaffney, and Rico Rodriguez. Plaintiff alleges Defendants violated his

Eighth Amendment rights by failing to allow Plaintiff an opportunity to decontaminate after

secondary exposure to OC spray. Plaintiff also alleges that Defendants have no effective policy

to ventilate an area that has been contaminated with OC spray. Defendants now move for

summary judgment. For the reasons below, the Court grants in part and denies in part

Defendants' motion.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on

August 30, 2013, and was housed at Snake River Correctional Institution ("SRCI") from

September 25, 2013, to March 7, 2018. King Decl. ¶ 3, ECF 56. At the time of the events at issue

here, Defendants Gaffney and Rodriguez were correctional officers employed at SRCI working

in the Disciplinary Segregation Unit ("DSU"). Am. Compl. at 3–4, ECF 23. Defendant King was

a lieutenant at SRCI supervising the DSU. Am. Compl. at 3. Defendants Gilmore and Bell were

both assistant superintendents at SRCI in charge of supervision of the DSU. Am. Compl. at 4.

Defendant Cain was the superintendent of SRCI, and Defendant Gower was the Assistant

Director of Operations for the Oregon Department of Corrections. Am. Compl. at 4. Defendant Peters was the Director of ODOC. Am. Compl. at 4.

At approximately 8:15 PM on May 5, 2017, DSU staff deployed chemical agents—"OC spray" or "pepper spray"— in a cell on the tier located above Plaintiff's cell in the DSU. Am. Compl. at 5; King Decl. ¶¶ 5–6, Att. 2. Prior to deploying the OC spray, Defendant King notified the physical plant at SRCI to deactivate the air handlers on the unit to minimize secondary exposure to the OC spray. King Decl. ¶ 6; *see also* Pettis Decl. ¶¶ 5–8, ECF 58 (describing "tear gas mode" and noting that "[t]he entire system is designed to limit the possibility of second hand exposure to the chemical agents"). Plaintiff, however, alleges that fumes from the OC spray filled the DSU, seeping under cell doors and causing Plaintiff and other inmates on the tier to choke and gag. Am. Compl. at 5. Plaintiff alleges that air vents blowing into the cells were shut off after the extraction team deployed the OC spray, but the air vents "sucking out" air were left on, causing a vacuum effect and filling his cell with toxic fumes. Am. Compl. at 5. The fumes caused Plaintiff's skin to itch and burn. Am. Compl. at 5. According to Plaintiff, fifteen minutes after the OC spray was deployed the vents were turned back. Am. Compl. at 5. From 9:00 to 9:50 PM, Hazmat orderlies removed the OC spray from the affected cell. King Decl. ¶ 7, Att. 2 at 17.

Defendant Rodriguez was assigned to the DSU as a floor officer on May 5, 2017. Rodriguez Decl. ¶ 5, ECF 57. Around 8:20 PM, Defendant Rodriguez offered a shower to the inmate who was directly sprayed with OC spray, but the inmate refused. *Id.* Defendant Rodriguez reported the refusal to a sergeant, logged it into the logbook, and wrote a memo stating that he had offered the inmate a shower. *Id.* Before heading back to the DSU, Defendant Rodriguez also spoke with Defendant King. *Id.* Plaintiff alleges that in the fifteen minutes following deployment of the OC spray he confronted Defendant Rodriguez, and Defendant

Rodriguez responded that there was nothing he could do. Am. Compl. 6. Plaintiff asserts that

Defendant Rodriguez left the unit to get fresh air and did not return for an hour and a half. Am.

Compl. 6. A little before 10:00 PM, Plaintiff and another inmate—Aaron Kent—asked

Defendant Rodriguez for a shower. Walsh Decl. Ex. 4 ("Kent Decl."), ECF 62; Am. Compl. at 8.

Defendant Rodriguez asserts that Plaintiff never spoke to him or asked him for anything that

night, and that he would have recalled if Plaintiff had because Plaintiff "was so quiet."

Rodriguez Decl. ¶ 5.

Plaintiff also alleges that about 20 minutes after the incident, Defendant Gaffney entered

the unit and immediately began choking and gagging. Am. Compl. at 6. Plaintiff alleges he and

others were yelling at Defendant Gaffney while he was walking through the unit, continuing to

choke and gag. Am. Compl. at 6. Plaintiff asserts that they specifically complained to Defendant

Gaffney about the air vent being prematurely turned back on and told him that they could not

breathe. Am. Compl. at 6–7. As Defendant Gaffney approached Plaintiff's cell, Plaintiff banged

on his window and said: "I am burning, I can't breathe and I need a shower to decontaminate."

Am. Compl. at 7. Defendant Gaffney ignored Plaintiff and was not seen again that night. Am.

Compl. at 7.

Plaintiff alleges on the morning of May 6, 2017, Plaintiff complained to a nurse of

burning and irritation and was told he was signed up to see someone. Am. Compl. at 9. Plaintiff

also alleges that he spoke with another nurse on May 7, 2017, and complained that his skin was

burning and itching and his throat was "raw from breathing the toxic fumes of chemical agent."

Am. Compl. at 9. Medical records from SRCI suggest that Plaintiff did not request to be seen by

sick call on May 6, 2017, the day after the use of OC spray in DSU-C. DiGiulio Decl. ¶ 5, ECF

55. Instead, Plaintiff signed up to see a sick call nurse for a sore throat on May 7, 2017, but later cancelled the appointment. *Id.*

Plaintiff had access to a towel and a sink in his cell which "help[ed] a little bit." Washington Decl. Ex. 1 (Walsh Dep. 24:5–11, 48:22–49:3), ECF 54. Plaintiff was given a shower two days after the incident when showers were provided to his side of the DSU pursuant to the typical shower rotation. Walsh Decl. Ex. 1 at 7–8 (Response to Plaintiff's Requests for Admission 29 and 30); King Decl. ¶ 8.

Plaintiff filed grievances regarding Defendants' failure to adequately clear the air from the unit and to provide Plaintiff with a shower on May 5 and 7, 2017. Walsh Decl. Exs. 5–6. Plaintiff appealed these grievances twice, exhausting the prison's grievance procedure. Am. Compl. at 7–10. On January 17, 2018, Plaintiff filed this suit. Compl., ECF 2.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff alleges that in failing to decontaminate him and adequately "air out" his unit after exposure to OC spray, Defendants violated the Eighth Amendment. Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment, arguing first that Defendants Peters, Gower, Cain, Bell, Gilmore, and King (the "Supervisory Defendants") were not personally involved in the alleged constitutional deprivations and cannot be liable under a theory of *respondeat*

*superior*. Defs. Mot. Summ. J. ("Def. Mot."), ECF 53. Defendants also argue that Plaintiff has

failed to establish an Eighth Amendment violation against all the named Defendants. *Id.*

The Court grants in part and denies in part Defendants' motion. A reasonable jury could

conclude that Defendants Rodriguez and Gaffney were deliberately indifferent to Plaintiff's

serious medical needs. Plaintiff, however, has not presented evidence that the Supervisory

Defendants were involved in the alleged constitutional violation as required by § 1983.

Accordingly, Defendants Peters, Gower, Cain, Bell, Gilmore, and King are dismissed form this

case.

## I.      **Defendants Gaffney and Rodriguez**

In moving to dismiss Defendants Gaffney and Rodriguez, Defendants make two

arguments. First, Defendants argue that Plaintiff cannot establish a claim for deliberate

indifference under the Eighth Amendment against either Defendant. Def. Mot. 17–18. Second,

Defendants argue that Defendants Gaffney and Rodriguez are entitled to qualified immunity

because a reasonable officer in their positions would not have believed that his actions were

unlawful. *Id.* at 19. The Court finds both arguments unavailing.

### A.      Deliberate Indifference

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately

indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05

(1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a

"serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at

104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition

could result in further significant injury or the unnecessary and wanton infliction of pain[.]"

*Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted).

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

In *Clement v. Gomez*, bystander inmates were exposed to pepper spray vapors when officers administered pepper spray in a neighboring cell to stop a violent fight. 298 F.3d at 902. Prison officials did not provide the bystander inmates with decontamination showers until four hours after the incident. *Id.* The defendants moved for summary judgment on the plaintiffs' Eighth Amendment claims, arguing that they were not deliberately indifferent to the bystander inmates' serious medical needs. *Id.* at 901. The Ninth Circuit first found that the plaintiffs' submissions—which documented the painful effects of pepper spray—satisfied the objective component of the Eighth Amendment test by demonstrating the presence of a serious medical need. *Id.* at 904. The court then found that the plaintiffs might be able to show that the defendants were subjectively aware of the risk of serious injury and therefore deliberately

indifferent in denying the plaintiffs showers and medical attention during the four-hour period. *Id.* at 905. The court emphasized that the officers were coughing and stepped outside for fresh air, and that the prisoners alleged that they made repeated requests for attention; were coughing, gaging, and choking; and complained of breathing problems, pain, and asthma attacks. *Id.* at 905. The court therefore concluded the defendants were not entitled to summary judgment on the plaintiffs' Eighth Amendment claims.

Here, Defendants argue that Defendants Gaffney and Rodriguez did not violate Plaintiff's Eighth Amendment rights. Defendants first assert that the facts in the record show that Defendant Rodriguez did not have any personal interaction with Plaintiff when Plaintiff alleges Defendant Rodriguez denied him access to a shower. Def. Mot. 16–17. As to Defendant Gaffney, Defendants argue that "even though Defendant Gaffney may have been on notice that Plaintiff was alleging he had been impacted by secondary exposure to the OC spray deployed during the cell extraction, Plaintiff has failed to establish that Defendant Gaffney purposefully ignored or failed to respond to his pain or possible medical need in a timely manner." *Id.* at 17. Finally, Defendants contend that Plaintiff has failed to establish an objectively serious illness or injury. *Id.*

Turning first to the claim against Defendant Rodriguez, the Court finds that there is an issue of fact as to whether Defendant had any personal interaction with Plaintiff. According to Defendants, Defendant Rodriguez—who was a DSU floor officer on the night of an incident— could not have been subjectively aware of Plaintiff's condition because he was not in the DSU for a period of time following the deployment of OC spray in order to complete paperwork and speak with Defendant King. Rodriguez Decl. ¶ 5. Defendant Rodriguez also asserts in his declaration that he did not speak with Plaintiff that evening and would have recalled if he had

done so because Plaintiff is a quiet inmate. *Id.* But Plaintiff alleges he confronted Defendant Rodriguez in the fifteen-minute period following the deployment of OC spray "when only one vent was shut off." Am. Compl. at 6. Plaintiff also contends that Defendant Rodriguez was choking because of the OC spray as he walked through the unit. Am. Compl. at 6. And Plaintiff and fellow inmate Aaron Kent both assert that they requested a shower from Defendant Rodriguez around 10:00 PM. Am. Compl. at 8; Kent Decl. Plaintiff alleges that Defendant Rodriguez responded "its 10 PM and if I give you a shower I have to give everyone a shower and I'm not doing that." Am. Compl. 8. In sum, Plaintiff's evidence shows that he alerted Defendant Rodriguez to his discomfort at least twice on the night of the incident, and Defendant Rodriguez was choking on the contaminated air in the unit. Yet, Defendant Rodriguez declined to assist Plaintiff. Thus, viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Rodriguez was subjectively aware of the risk of injury to Plaintiff and therefore deliberately indifferent to Plaintiff's serious medical need in denying Plaintiff a chance to decontaminate.

Turning next to the claim against Defendant Gaffney, Defendants argue that Plaintiff has "failed to establish that Defendant Gaffney purposefully ignored or failed to respond to [Plaintiff's] pain or possible medical need in a timely matter" even if Defendant Gaffney was on notice that Plaintiff was alleging he had been secondarily exposed to OC spray. Def. Mot. 17. Specifically, Defendants point to the competing concerns that the officers faced that evening, including assembling an extraction team, deploying a chemical agent, and assembling a Hazmat team to clean the cell. *Id*. These competing concerns, however, are documented by Defendant King, not Defendant Gaffney. *See* King Decl. ¶¶ 5–7. Moreover, deployment of the OC spray and removal of the inmate from his cell occurred at least twenty minutes before Plaintiff's

conversation with Defendant Gaffney, Am. Compl. at 6, and there is no evidence Defendant

Gaffney was involved in assembling the Hazmat team or in the cell extraction, *see* King Decl.

Att. 2 at 2–3 (Unusual Incident Report). In addition, Plaintiff claims that Defendant Gaffney

immediately began choking and gagging when he entered the tier, and that Plaintiff was yelling

out of his cell at Defendant Gaffney that he could not breathe and needed a shower to

decontaminate. Am. Compl. at 7. According to Plaintiff, Defendant Gaffney ignored Plaintiff.

Am. Compl. at 7. There is an issue of fact as to whether Defendant Gaffney—who, like

Defendant Rodriguez, is alleged to have experienced the effects of the OC spray as he walked

through the tier and ignored Plaintiff's requests—acted with deliberate indifference to Plaintiff's

medical needs.

Finally, Defendants argue that Plaintiff has failed to establish that he suffered a serious

injury as a result of his secondary exposure to OC spray. Def. Mot. 17. Defendants focus

Plaintiff's failure to obtain medical care in the days following the incident and on the air

circulation system, which Defendants contend make it impossible for air from one cell to flow

into another cell on a different tier. *Id.* (citing Pettis Decl. ¶¶ 6–8). But, on this record, there is an

issue of fact as to whether Plaintiff had a serious medical need. Though the air circulation system

is designed to "limit the possibility of second hand exposure to the chemical agents" and "air

from one cell is not blown into another cell even when the system is not in tear gas mode," Pettis

Decl. ¶ 8, the evidence does not demonstrate that it is impossible for air from one cell to flow

into another cell on a different tier. Nor do Defendants provide any evidence to counter

Plaintiff's assertion that the system was returned to normal operation before the Hazmat team

finished cleaning. Am. Compl. at 6; *see also* Walsh Decl. Ex. 1 at 2 (stating in Response to

Plaintiff's Request For Admission 12: "There is no documentation of the time the vents were

turned back on[.]"). Defendants also admit that fumes could spread if the air system was turned

back on before cleaning and cause some secondary exposure. Walsh Decl. Ex. 1 at 2 (Response

to Plaintiff's Request for Admission 14). Further, Plaintiff submits evidence that both he and

another inmate experienced pain and breathing problems along with choking, gagging, burning,

and itching throughout the night. Am. Compl. at 6–8; Kent Decl.; *see also Clement*, 298 F.3d at

904 (The plaintiffs' satisfied the objective component of the test for an Eighth Amendment

violation because their "submissions document[ed] the painful effects of pepper spray."). Thus,

whether Plaintiff had a serious medical need as a result of secondary exposure to pepper spray is

a question for the jury.

      B.      Qualified Immunity

Government officials may be entitled to qualified immunity for claims brought under

§ 1983. To determine whether a government official is entitled to qualified immunity, "[t]he

court must first determine whether, examining the facts in the light most favorable to the

plaintiff, the official violated the plaintiff's constitutional rights." *Barnes v. Gower*, No. 2:12-

CV-01880-HZ, 2015 WL 736348, at \*8 (D. Or. Feb. 17, 2015) (citing *Clement*, 298 F.3d at 903).

Then, if the court finds the official violated the plaintiff's constitutional rights, it must determine

"whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While

"there must be some parallel or comparable factual pattern[,] . . . the facts of already decided

cases do not have to match precisely the facts with which [the government employer] is

confronted." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (citing

*Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)).

First, as described above, a reasonable jury might conclude that Defendants Rodriguez

and Gaffney were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth

Amendment. Second, when Defendants Rodriguez and Gaffney are alleged to have violated

Plaintiff's Eighth Amendment rights, Plaintiff's rights were clearly established. In *Clement*, the

Ninth Circuit found that very similar circumstances may have established a violation of the

Eighth Amendment. *See Clement*, 298 F.3d at 905 (finding that when officers were coughing and

gagging and opening the door to circulate air, and the inmates were repeatedly complaining to

officers of breathing problems and pain, the inmates "may be able to show that the defendants

were subjectively aware of the risk of serious injury when they denied showers and medical

attention for the inmates for the 4 hour period."). Thus, viewing the record in the light most

favorable to Plaintiff, a reasonable officer in Defendants' position would understand that it was

unlawful to ignore Plaintiff's complaints of pain and deny Plaintiff the opportunity to

decontaminate after secondary exposure to OC spray. Defendants Gaffney and Rodriguez are

therefore not entitled to qualified immunity.

## II. Supervisory Defendants

Defendants move for summary judgment on the claims against the Supervisory

Defendants, arguing they should be dismissed from this case because Plaintiff has not shown that

the Supervisory Defendants were personally involved in the alleged constitutional violation.[1]

"[F]or a person acting under color of state law to be liable under section 1983 there must be a

showing of personal participation in the alleged rights deprivation: there is no respondeat

superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

---

[1] Defendants make additional arguments in support of their motion for summary judgment
against the Supervisory Defendants. Because Plaintiff has failed to show that the Supervisory
Defendants were personally involved in the alleged constitutional deprivation, the Court declines
to reach the remainder of Defendants' arguments.

"A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

For example, in *Clement*, the circuit court concluded that a failure to institute adequate prison policies can lead to liability where it "'reflects a deliberate or conscious choice' to 'follow a course of action . . . from among various alternatives.'" *Clement*, 298 F.3d at 905 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Specifically, the court held that the plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for

more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal citations and quotations omitted). On the record before it, the court found that a factfinder could find that the supervisors and policymakers were "on actual or constructive notice of the need to train," noting "[t]he plaintiffs' submissions recite[d] numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates." *Id.*

Here, Plaintiff concedes that his claims against Defendants Peters, Gower, Bell, Gilmore, Cain, and King are based on supervisory liability. However, Plaintiff argues that his claims against the Supervisory Defendants should survive summary judgment because the Supervisory Defendants have been ineffective in training their subordinates to assist inmates secondarily exposed to OC spray. Pl. Resp. 1, ECF 62. Plaintiff contends that the Supervisory Defendants have a known history with secondary exposure claims but have failed to change the policies and procedures that have led to such claims. *Id.* To demonstrate the Supervisory Defendants' knowledge, Plaintiff states that they have been "sued by Plaintiff 2 x and settled both claims but then changed <u>no</u> procedures which caused Plaintiff to suffer this experience 2 more times." Pl. Resp. 3.

Plaintiff, however, has presented no evidence that the Supervisory Defendants are liable for deliberate indifference. Though there does not appear to be an official policy or procedure in place for assisting inmates who have been indirectly exposed to OC spray, *see* Pl. Resp. 2–3, Plaintiff has not established that the Supervisory Defendants were on actual or constructive notice that these procedures were ineffective or harmful or that the training of their subordinates was inadequate, *cf. Clement*, 298 F.3d at 905 (finding that the plaintiffs may have established

that supervisors were on actual or constructive notice of the need to train in submitting "numerous instances of the use of pepper spray that allegedly harmed bystander inmates."). Plaintiff writes in his motion that he has successfully sued Defendants for secondary exposure in the past, but—except for a single allegation in his verified complaint—there is no evidence of or citation to the suits in the record. *See* Am. Compl. at 10 ("Judy Gilmore was just sued by Plaintiff for the same exact thing and Plaintiff prevailed so Defendant Gilmore knew the importance of not admitting my request for a shower and being denied. . . . [W]hen Plaintiff won the previous suits it was agreed that inmates now get showers but SRCI changed nothing."). Without more, the Court finds that no reasonable jury could conclude that the Supervisory Defendants are liable for the alleged Eighth Amendment violation.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment [53]. Defendants Bell, Cain, Gilmore, Gower, King, and Peters are dismissed from this case.

IT IS SO ORDERED.

Dated _____March 9, 2020_____.


_____

MARCO A. HERNÁNDEZ
United States District Judge